UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

TRUSTEES OF THE DISTRICT COUNCIL 9 PAINTING )
INDUSTRY INSURANCE AND ANNUITY FUNDS,       )     Index No.: 19-CIV-2744
                                            )
                         Plaintiffs,        )     **COMPLAINT**
                                            )
       -against-                            )
                                            )
SMW SERVICES CORP. and ANTHONY CIPRI,       )
Individually,                               )
                                            )
                         Defendants.        )

----------------------------------------------------------------

Plaintiffs, Trustees of the District Council 9 Painting Industry Insurance and Annuity Funds (hereinafter referred to as the "Funds") by their attorneys Barnes, Iaccarino & Shepherd LLP allege as follows:

## NATURE OF THE ACTION AND JURISDICTION AND VENUE

1. This civil action is based on the provisions of Section 301 of the Labor Management Relations Act of 1947 (hereinafter referred to as the "Taft-Hartley Act") 29 U.S.C. Section 185, and on Section 502(a)(3) and Section 515 of the Employee Retirement Income Security Act, as amended (hereinafter referred to as "ERISA") (29 U.S.C. Section 1132(a)(3) and 29 U.S.C. 1145).

2. Jurisdiction is conferred upon this Court by Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185) and Sections 502(e)(1) and 502(f) of ERISA (29 U.S.C. Sections 1132(e)(1) and 1132(f)); and derivative jurisdiction is contained in 28 U.S.C. Sections 1331 and 1337.

3. Venue properly lies in this District under the provisions of 502(e)(2) of ERISA (29 U.S.C. Section 1132(e)(2)) and Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185) and 28 U.S.C. Section 1391(b).

4. This action is brought by the respective Trustees of the Funds in their fiduciary capacities for monetary damages and other equitable relief under ERISA and for breach of a labor contract to secure performance by an Employer of specific statutory and contractual obligations to submit the required monetary contributions and/or reports to the Plaintiffs in a timely fashion. This Complaint alleges that by failing, refusing or neglecting to pay and submit the required monetary contributions, reports and late charges to the Funds, Defendants violated their Trade Agreement, the respective trust agreements of the Funds, the Taft-Hartley Act and ERISA.

## PARTIES

5. The Plaintiffs' Trustees are, at all relevant times, the fiduciaries of jointly administered multi-employer, labor management trust funds as defined by Section 3(21)(A) and Section 502(a)(3) of ERISA (29 U.S.C. Sections 1002(21)(A) and 1132(a)(3)). The Funds are established and maintained by the D.C. 9 International Union of Painters and Allied Trades (hereinafter referred to as the "Union") and various Employers pursuant to the terms of the Trade Agreements and Trust Indentures in accordance with Section 302(c)(5)(1) and (c) (6) of the Taft-Hartley Act (29 U.S.C. Section 186 (c)(5) and (c) (6)). The Funds are employee benefit plans within the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. Sections 1002 3(1), 3(2), 3(3) and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. Sections 1002(37) and 1145). Plaintiffs are Trustees of the Funds and the "plan sponsor" within the meaning of Section (3)(16)(B)(iii) of ERISA (29 U.S.C. Section 1002(16)(B)(iii)).

6. The Funds provide fringe benefits to eligible employees, retirees and their dependents on whose behalf the Employer is required to contribute to the Funds pursuant to its Trade Agreement (hereinafter referred to as the "Agreement") between the Employer and the Union. The Funds are authorized to collect contributions on behalf of the employees from the Employers, and the Plaintiff Trustees as fiduciaries of

the Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 U.S.C. Section 1132(d)(1)) and are obligated to bring actions to enforce the provisions of the Trade Agreement and Trust Indentures that concern the protection of employee benefit rights.

7. The Funds' maintain an office for the transaction of business at 595 West Hartsdale Avenue, White Plains, NY, 10607, in the County of Westchester.

8. The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185) which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. Section 142), and Section 3(4) of ERISA (29 U.S.C. Section 1002(4)), and as further defined in Section 12 of the General Associations Law of the State of New York.

9. The Union maintains an office and is administered at 595 West Hartsdale Avenue, White Plains, NY, 10607, in the County of Westchester.

10. Upon information and belief, the Defendant, SMW Services Corp. (hereinafter referred to as "the Employer" or "SMW") at all relevant times, was and is an "employer" within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. Sections 1002(5) and 1145) and was and still is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185).

11. Upon information and belief, SMW was and is a for-profit domestic corporation with its principal place of business at 70 Central Avenue, Farmingdale, NY, 11735, in the County of Suffolk.

12. Upon information and belief, Defendant, Anthony Cipri (hereinafter referred to as the "Employer" or "Cipri"), is an owner, officer, director and/or managing agent of the corporate defendant and resides at 7727 66th Road, Middle Village, NY, 11379, in the County of Queens.

13. To the extent that SMW and Anthony Cipri exercised authority and/or control with respect to the management or disposition of assets of an ERISA covered plan, they are fiduciaries within the meaning of ERISA Section 3(21)(A) (29 U.S.C. Section 1002(21)(A).

## CAUSES FOR RELIEF
## AS AND FOR A FIRST CLAIM FOR RELIEF

14. The Employer executed an Agreement with the Union and/or was and still is a party to an Agreement with the Union by virtue of membership in an Employer Association.

15. The Agreement and/or Policy for Collection of Delinquent Contributions (hereinafter referred to as the "Policy") requires the Employer to submit contribution reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the Agreement for all work performed by its employees covered by the Agreement and to remit such monetary contributions in a timely fashion in accordance with the Agreement and the rules and regulations established in the Policy.

16. Upon information and belief, as a result of work performed by the individual employees of the Employer pursuant to the Agreement there became due and owing to the Funds from the Employer contribution reports, fringe benefit contributions, and late charges.

17. The Employer has failed and refused to remit to the Funds those reports and/or fringe benefit contributions due and owing under the Agreement and in accordance with the Agreement and Policy for the period April 1, 2014 through to and including September 30, 2015 and week ending October 14, 2018 through to and including January 27, 2019 in the minimum amount of $60,282.43.

18. These amounts described in Paragraph 17 above are due and owing to the Funds and are based upon an audit for the period April 1, 2014 through to and including September 30, 2015 that was conducted by the Funds' Office and reports submitted by the Employer and payroll information submitted by some employees.

19. Pursuant to the Agreement and Policy upon the Employer's failure to remit benefit contributions in a timely fashion and failure to remit the late charges to the Funds' office, the Employer is obligated to pay late charges that consists of interest and liquidated damages. Article XXII Section 2(a) and (b) of the Agreement states, in pertinent part, "that if the required Art. XX Fringe Benefit Contributions shall become delinquent, the amount of damage resulting from any such delinquency shall be, by way of liquidated damages, and not as a penalty, a sum equivalent to 10% of the total Art. XX Fringe Benefit Contributions required pursuant to this Trade Agreement, for each failure to pay in full with the time provided…..in addition to the amount assessed as liquidated damages, interest shall be added to the obligation…calculated monthly at the annual rate of the prime rate plus 2.0%, which shall be calculated based upon the sum of all Art. XX Fringe Benefit Contributions due for the period…."

20. In addition, Article XXII Section 2(c) of the Agreement provides that should it become necessary to proceed with legal action to collect the late charges, the Employer shall be responsible for attorneys' fees court costs and disbursements incurred in collecting the late charges.

21. The Employer has failed and refused to remit to the Funds late charges due and owing under the Agreement and in accordance with the Policy in the amount of $23,570.47 for the period July 1, 2017 through and including September 30, 2018.

22. The Employer's failure, refusal or neglect to remit the proper contributions, reports, and late charges to the Plaintiffs constitutes a violation of the Agreement between the Employer and the Union wherein the Funds are third party beneficiaries.

23. Pursuant to the Agreement and the Policy upon the Employer's failure to timely remit payment of fringe benefit contributions same shall be subject to interest at the rate of 2% above prime per annum and liquidated damages at the rate of 20% of the delinquent contributions. In addition if enforcement or collection procedures shall be commenced against an employer, such employer shall be

required to pay the reasonable cost of expenses including attorneys' fees, auditors' fees, court costs and disbursements.

24. Accordingly, pursuant to the Agreement the Employer is liable to Plaintiffs the minimum amount of $23,570.47 in late charges and $60,282.43 in unpaid contributions, plus interest, liquidated damages, attorneys' fees, auditors' fees, court costs and disbursements.

## AS AND FOR A SECOND CLAIM FOR RELIEF

25. Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs "1" through "24" of this Complaint as if fully set forth at length herein.

26. Section 515 of ERISA, (29 U.S.C. Section 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of the Agreement and Trust Indentures.

27. The Employer has failed to pay or timely pay the fringe benefit contributions and/or submit the contribution reports to Plaintiffs owed as a result of work performed by individual employees of the Employer. Such failure to make timely payment constitutes a violation of Section 515 of ERISA (29 U.S.C. Section 1145).

28. Section 502 of ERISA (29 U.S.C. Section 1132) provides that upon a finding of an employer violation of Section 515 of ERISA (29 U.S.C. Section 1145) which requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements, the Court shall award payment to a plaintiff Fund of the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid principal amount due together with reasonable attorneys' fees and costs and disbursements incurred in the action.

29. The failure to pay has injured the Funds by delaying the investment of contributions and causing unnecessary administrative costs for the Funds and has injured the participants and beneficiaries

and other contributing employers of the benefit plan in the form of lower benefits and higher contribution amounts.

30. Accordingly, the Employer is liable to Plaintiffs under the Agreement and any Trust Indenture concerning the payment of fringe benefit contributions and late charges and under Sections 502 and 515 of ERISA (29 U.S.C. Sections 1132 and 1145) due to the failure to pay contributions when they are due.

31. Accordingly, the Employer is liable to the Funds in the minimum principal amount of $23,570.47 in late charges owed and benefit contributions owed in the amount of $60,282.43 plus liquidated damages, interest, attorneys' fees, auditors' fees, court costs and disbursements pursuant to Section 502 of ERISA (29 U.S.C. Section 1132).

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF ERISA OBLIGATIONS
### BY SMW and CIPRI DUE TO THE FAILURE TO REMIT FRINGE BENEFIT
### CONTRIBUTIONS)

32. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "31" of this Complaint as if fully set forth at length herein.

33. Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit, 29 U.S.C. Section 1106(a)(1)(A) and (B). Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. Section 1106(b)(1) - (3).

34. At all times relevant herein, SMW and Cipri were a party in interest with respect to the Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A),(C) and (E), 29 U.S.C. Section 1002(14)(A), and (E).

35. By withholding the contributions from the Funds, SMW and Cipri dealt with plan assets in its own interest and/or exchanged property or extended credit from plan assets for its own personal use and benefit in violation of ERISA Sections 406(a) and (b), 29 U.S.C. Section 1106(a) and (b).

36. By retaining assets of the Funds for their own use, SMW and Cipri as fiduciaries have breached the fiduciary obligations owed to the Funds and committed prohibited transactions within the meaning of Part 4 of Subchapter I of Chapter 18 of Title 29 of the United States Code, 29 U.S.C. Section 1101 *et seq.*

37. SMW and Cipri are singly and jointly liable to make restitution to the Funds in the amounts as are set forth herein, no part of which has been paid.

38. As a result of the breaches of fiduciary duty described above, SMW and Cipri are liable to the Funds for the amounts set forth herein, which include contributions, interest, liquidated damages, and the costs and fees of collection.

### AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST ANTHONY CIPRI FOR BREACH OF CONTRACT

39. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "38" of this Complaint as if set forth at length herein.

40. Upon information and belief, defendant Cipri is the owner and/or president or officer of SMW and has actual control of the defendant SMW.

41. Article XXI Section 1(d) of the Agreement states, in pertinent part:

> the failure of an Employer to make fringe benefit contributions or pay interest, liquidated damages or fees related thereto as provided…shall be attributed to any officer, stockholder, partner or proprietor in actual control of said Employer, and execution of this Trade Agreement by any such person shall bind said person individually to the terms and conditions set forth herein A default in payment of any fringe benefit contributions or interest, liquidated damages or fees related thereto due pursuant to this Article…shall follow said officer, stockholder, partner, and/or proprietor into any succeeding enterprise entered into by said person.

42. SMW has failed and refused to remit to the Funds those fringe benefit contributions due and owing for the period April 1, 2014 through to and including September 30, 2015 and week ending October 14, 2018 through to and including January 27, 2019 in the minimum sum of $60,282.43.

43. SMW has failed and refused to remit to the Funds the unpaid late charges (interest and liquidated damages) for the period July 1, 2017 through and including September 30, 2018 in the amount of $23,570.47.

44. The failure, refusal or neglect of SMW to remit the contributions and interest and liquidated damages to the Funds is a violation of the terms of the Agreement with the Union and in accordance with the Agreement shall also be attributed to defendant Cipri.

45. Accordingly, pursuant to the Agreement, defendant Cipri is liable to the Funds in the minimum principal amount of $60,282.43 in unpaid contributions, plus interest, liquidated damages, attorneys' fees, court costs and disbursements and unpaid late charges for the period July 1, 2017 through and including September 30, 2018 in the amount of $23,570.47.

## AS AND FOR AN FIFTH CLAIM FOR RELIEF AGAINST CIPRI UNDER ERISA SECTION 404

46. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "45" of this Complaint as if set forth at length herein.

47. Upon information and belief, defendant Cipri executed Agreements with the Union, with respect to which plaintiff Funds are third party beneficiaries.

48. Upon information and belief, defendants Cipri is an officer and owner of defendant SMW and have been acting with authority and control with respect to the obligations owed under the terms of the Agreement.

49. At all relevant times, defendant Cipri has had complete and unfettered authority over the management, finances and operations of SMW.

50. At all relevant times, Cipri determined which creditor to pay and when.

51. ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" 29 U.S.C. Section 1104 (a)(1)(A).

52. ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law, 29 U.S.C. Section 1104(a)(1)(D).

53. As a result of the work performed by Defendants under the Agreement, Defendants, upon information and belief, received substantial sums of money related to the work performed, which intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

54. By exercising control over assets belonging to the Funds, Defendant Cipri is a fiduciary with respect to the Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. Section 1002(21)(A). The Individual Defendants are fiduciaries with respect to the plan assets that he failed to timely pay into the Funds.

55. Upon information and belief, defendant Cipri owned, controlled and dominated the affairs of SMW and carried on the business of SMW for his own personal ends.

56. At all relevant times, defendant Cipri has had complete and unfettered authority over the finances and operations of SMW.

57. Upon information and belief, Defendant Cipri had managerial discretion and control over SMW, made all decisions on behalf of SMW, signed contracts governing SMW, signed bank checks for SMW, and made all decisions concerning payments by SMW.

58. Upon information and belief, Defendant Cipri determined which creditors SMW would pay and when, determined when the Plaintiff Funds would be paid, determined how much money would be paid to the Plaintiff Funds, and exercised control over money due and owing to the Plaintiff Funds.

59. Upon information and belief, Defendant Cipri commingled assets of the Plaintiffs' Funds with SMW's general assets and used the Plaintiff Funds' assets to pay other creditors of SMW's rather than forwarding the assets to the Plaintiff Funds.

60. By failing and refusing to turn over to the Plaintiff Funds the contributions, which are property of the Funds, SMW and Defendants Cipri have converted the property of the Funds.

61. Upon information and belief, while retaining Plaintiff Funds' contributions, Defendant Cipri diverted the Plaintiff Funds' assets for his own personal use.

62. By withholding contributions from Plaintiffs' Plans, Defendants are individually and personally liable for the violations of ERISA Section 404 described herein, 29 U.S.C. Section 1104.

63. By withholding the contributions from the Funds, Defendant Cipri received and retained for his own personal use and benefit, monies which were rightfully assets of the Funds in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. Section 1104(a)(1)(A).

64. By withholding the contributions from the Plaintiff Funds, Defendant Cipri failed to abide by the instruments governing the Funds in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. Section 1104(a)(1)(D).

65. As a result of the breaches of fiduciary duty described above, Defendant Cipri is liable to the Funds for the amounts set forth herein which include contributions, interest, liquidated damages and the costs and fees of collection and the Defendants must singly and jointly disgorge to the Funds said converted assets.

## AS AND FOR A SIXTH CLAIM FOR RELIEF AGAINST ANTHONY CIPRI UNDER ERISA SECTION 406

66. Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs "1" through "65" of this Complaint as if fully set forth at length herein.

67. Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit, 29 U.S.C. Section 1106(a)(1)(A) and (B). Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. Section 1106(b)(1) - (3).

68. At all times relevant herein, Defendants were parties in interest with respect to the Plaintiff Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A),(C) and (E), 29 U.S.C. Section 1002(14)(A), and (E).

69. Upon information and belief, Cipri consistently exercised control over SMW for his personal accounts and is personally liable for his accrued and any current obligations.

70. By withholding the contributions from the Plaintiff Funds, Defendants dealt with plan assets in their own interest and/or exchanged property or extended credit from plan assets for their own personal use and benefit in violation of ERISA Sections 406(a) and (b), 29 U.S.C. Section 1106(a) and (b).

71. By retaining assets of the Plaintiffs' Funds for their own use, said Defendants as fiduciaries have breached the fiduciary obligations owed to the Plaintiff Funds and committed prohibited transactions within the meaning of Part 4 of Subchapter I of Chapter 18 of Title 29 of the United States Code, 29 U.S.C. Section 1101 *et seq.*

72. The Defendants are singly and jointly and individually liable to make restitution to the Funds in the amounts as are set forth herein, no part of which has been paid.

73. As a result of the breaches of fiduciary duty described above, Defendants are liable to

the Plaintiff Funds for the amounts set forth herein which include contributions, interest, liquidated damages, and the costs and fees of collection.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

74. Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs "1" through "73" of this Complaint as if set forth at length herein.

75. Pursuant to ERISA, the Agreement and/or Trust Indenture, the Employer is required to timely submit current fringe benefit contributions and reports to plaintiffs.

76. Upon information and belief, the Employer has in the past failed to timely submit current fringe benefit contributions, and reports to plaintiffs and is in breach of the statutory obligations under ERISA, the Agreement and Trust Indenture.

77. During the course of the instant action, additional contributions and/or delinquency charges may become due and owing. If defendant fails to pay the contributions and/or delinquency charges, as part of this action, at the time of trial or judgment, whichever is later, those additional amounts should be included.

**WHEREFORE**, Plaintiffs respectfully pray for Judgment as follows:

On the First through Sixth Claim for Relief against Defendants:

    (a) In the minimum sum of **$60,282.43** representing benefit fund contribution for the period April 1, 2014 through to and including September 30, 2015 and week ending October 14, 2018 through to and including January 27, 2019, plus interest, liquidated damages, attorneys' fees, court costs and disbursements.

    (b) In the minimum sum of **$23,570.47** representing late charges for the period July 1, 2017 through and including September 30, 2018 all in accordance with the Trade Agreement and the policy for collection of delinquent contributions.

On the Seventh Claim for Relief:

    (c) Damages in the amount of any additional contributions and/or delinquency charges which may become due and owing during the course of the instant action which amount shall include the principal plus interest and liquidated damages.

On all Claims for Relief:

    (d) For such other and further relief as to the Court deems appropriate.

Dated: Elmsford, New York
       March ___, 2019

Respectfully submitted,

BARNES, IACCARINO &
SHEPHERD LLP

*Dana L. Henke*
Dana L. Henke
Attorneys for Plaintiffs
258 Saw Mill River Road
Elmsford, New York 10523
(914) 592-1515